NO. 07-06-0304-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



OCTOBER 18, 2007



______________________________




OTIS NOBLE, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 227th DISTRICT COURT OF BEXAR COUNTY;



NO. 2005CR3879; HONORABLE PHILIP A. KAZEN, JR., JUDGE



_______________________________



Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

MEMORANDUM OPINION


 Following a plea of not guilty, Appellant, Otis Noble, was convicted of possession
of a controlled substance, enhanced. Punishment was assessed at twenty years
confinement and a $10,000 fine. Appellant challenges the admission of evidence seized
from his bedroom during a warrantless search which he contends violated his rights under
the Fourth Amendment of the United States Constitution, article 1, § 9 of the Texas
Constitution, and article 38.23 of the Texas Code of Criminal Procedure. He presents
three sub-issues questioning (1) whether his brother, Nathan Noble, had actual authority
to consent to a search of his separate bedroom; (2) whether Nathan had apparent authority
to consent to a search of his separate bedroom; and (3) alternatively, whether the State
sustained its burden of proving that Nathan's consent was freely and voluntarily given. We
affirm.

Background

 Based on a tip from a confidential informant that Appellant and a friend, Nathan
Wells, were selling crack cocaine, Detective Gene Valdez conducted surveillance of
Appellant's house for three days. On March 29, 2005, Valdez drove by the house and
observed Appellant and Wells sitting on the front porch. He immediately contacted other
officers for assistance and set up a meeting to determine how to proceed on a "knock and
talk." He explained that a "knock and talk" involves asking permission to search based on
information. 

 Upon returning to the residence, Detective Valdez noticed that Appellant and Wells
were no longer there. Another individual, later identified as Appellant's brother, Nathan
Noble, was observed locking the front door and walking toward the street. An officer
approached Nathan and asked if there were any narcotics in the house. According to
Detective Valdez's testimony, Nathan was cooperative and he verbally agreed to allow
officers to enter the house. 

 Once inside the house, Detective Phillips spent some time conversing with Nathan
to determine his authority and competency to sign a consent to search form. He testified
that after learning that Nathan had steady employment and paid his bills on time, he was
confident that Nathan had both the legal authority and competency to sign a consent to
search form. Nathan then signed a form consenting to a search of the entire residence. 
At trial, Nathan testified that although the signature on the consent form looked like his, he
did not recall signing it. 

 The house has two bedrooms. Nathan testified that Appellant lived with him. Proof
of residency was discovered on Appellant's dresser in the form of a letter addressed to
him. Both Detective Phillips and Nathan testified that Nathan pointed out his own bedroom
and then Appellant's bedroom. According to Detective Phillips, the door to Appellant's
bedroom was open and he could see drug paraphernalia in plain view on the dresser. 

 Detective Valdez searched Appellant's room and observed the edge of a coffee can
underneath Appellant's bed. He testified that given his experience and training, he knew
that controlled substances are often hidden in coffee cans. He moved the open can out
from underneath the bed and noticed a baggie containing approximately sixteen rocks of
a substance he believed to be crack cocaine. (1) Detective Phillips performed a field test on
a small rock which tested positive for cocaine. Shortly after the discovery of the cocaine,
Appellant returned home and was placed under arrest.

 Appellant filed a pretrial motion to suppress seeking, among other things,
suppression of the evidence based on violations of his constitutional and statutory rights. 
Detectives Valdez and Phillips were the only witnesses at the hearing on Appellant's
motion. The trial court ruled that Nathan had at least apparent authority to consent to a
search of the entire premises and denied Appellant's motion.

 The gist of Appellant's contention is that the crack cocaine was admitted into
evidence in violation of his constitutional rights. The State argues that the issue has not
been preserved for appellate review. (2) We agree, but in the interest of justice will review
Appellant's contentions. 

Standard of Review 


 A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. 
Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). In determining whether the
trial court abused its discretion we give "almost total deference to a trial court's
determination of the historical facts" and review the court's application of the law to the
facts de novo. Guzman v. State, 955 S.W.2d 85, 88-89 (Tex.Crim.App. 1997). Where the
trial court has not made explicit findings of fact, we review the evidence in the light most
favorable to the trial court's ruling and assume the trial court made implicit findings of fact
to support the ruling. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex.Crim.App. 2000). 
The decision of the trial court will be sustained if it is correct on any theory of law applicable
to the facts of that case. State v. Ross, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000).

Consent Exception to Warrantless Searches
 

 The Fourth Amendment to the United States Constitution and article 1, § 9 of the
Texas Constitution protect individuals "against unreasonable searches and seizures." A
warrantless search is presumptively unreasonable subject only to a few specifically
established and well-delineated exceptions. Katz v. United States, 389 U.S. 347, 357, 88
S.Ct. 507, 19 L.Ed.2d 576 (1967). One such specifically established exception is a
consensual search and seizure. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct.
2041, 36 L.Ed.2d 854 (1973); Meeks v. State, 692 S.W.2d 504, 509 (Tex.Crim.App. 1985). 
Therefore, a warrantless search made after a voluntary consent is constitutionally
permissible. Reasor v. State, 12 S.W.3d 813, 818 (Tex.Crim.App. 2000). 

Third Party Consent

 It is not always necessary that consent be given by the party asserting the
constitutional violations. Permission to search may also be given by a third party who
possesses common authority over or other sufficient relationship to the premises or effects
sought to be searched. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39
L.Ed.2d 242 (1974). The Fourth Amendment recognizes a valid warrantless entry and
search of premises when police obtain the voluntary consent of an occupant who shares,
or is reasonably believed to share, authority over the area in common with a co-occupant
who later objects to the use of evidence so obtained. Georgia v. Randolph, 547 U.S. 103,
106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), citing Illinois v. Rodriguez, 497 U.S. 177,
110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). "Common authority" rests on mutual use of
property by a person generally having joint access or control for most purposes, so that it
is reasonable to assume that any of the co-occupants has the right to permit the inspection
in his own right and the other co-occupants are deemed to have assumed the risk that one
of their number might permit the common area to be searched. Matlock, 415 U.S. at 171
n.7. 

 The State bears the burden of proving that the person who gave consent had the
actual or apparent authority to do so. Rodriguez, 497 U.S. at 181. Additionally, the State
must show that consent was positive, unequivocal, and absent of duress or coercion. 
Corea v. State, 52 S.W.3d 311, 316 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). In a
situation that presents an ambiguity as to apparent or actual authority to consent, the State
cannot satisfy its burden if the police officer proceeds without making further inquiry. Id.
at 317.

Actual Authority


 The Texas Court of Criminal Appeals has recognized privacy considerations in an
individual's bedroom. Becknell v. State, 720 S.W.2d 526, 528 (Tex.Crim.App. [Panel Op.]
1986). In Becknell, the defendant claimed that his father lacked the authority to consent
to the search of his padlocked bedroom. His father, who owned the home, testified he was
allowed in the bedroom only when his adult son was home. The defendant's sister also
testified that "no one was allowed" in his room. The Court concluded that, "on the narrow
facts of the case" Becknell's father did not have actual authority to consent to a search of
his son's bedroom. Id. at 528. 

 In this case, Detective Valdez testified at the suppression hearing that Nathan
owned the house and paid the bills. Nathan testified that Appellant lived with him and that
occasionally he used Appellant's bedroom as a means of getting to the kitchen. The
diagram of the house used at trial showed that Appellant's bedroom could be used as a
means to access the kitchen and laundry room from the living room. Furthermore, there
was no evidence that Appellant kept his door closed, much less locked. Appellant testified
that his bedroom was exclusively his; however, further testimony showed that Appellant
had shared his bedroom with a girlfriend and that Appellant's friends often drank and
smoked in the bedroom. Under the facts of this case, we conclude that if the trial court
found that Nathan had actual authority to consent to a search of Appellant's bedroom, that
finding would not have been an abuse of discretion. However, our decision need not rest
solely on a finding of actual authority. 

Apparent Authority


 When the facts do not support consent from a person with actual authority, a search
may nevertheless be proper if the person giving consent had apparent authority to do so. 
Rodriguez, 497 U.S. at 188-89. The third-party consent is valid if the facts available to the
officer at the time of the search would cause a person of reasonable caution to believe that
the consenting party had authority over the premises. Id. at 188. Although the Texas Court
of Criminal Appeals has not expressly adopted the doctrine of apparent authority, several
intermediate appellate courts have recognized it. See McNairy v. State, 835 S.W.2d 101,
105 (Tex.Crim.App. 1991). (3) When ambiguous circumstances arise that cast doubt on the
effectiveness of the consent or the extent of the consent given, in order to be
constitutionally valid officers must make further inquiry to determine the legal parameters
of the search. Id. 

 The testimony established that Detective Phillips questioned Nathan to determine
if he was qualified to give consent. According to Phillips, Nathan was very cooperative. 
Phillips's inquiry established that Nathan either owned the house or was paying rent and
that Appellant paid Nathan rent and lived with him. Nathan testified that when Appellant
was not home, he would cut through Appellant's bedroom to go to the kitchen. Appellant
testified that although Nathan had no access to anything in his room, he acknowledged that
Nathan occasionally did walk through his room on his way to the kitchen. Appellant further
testified that when he entertained guests in his bedroom, they walked through his bedroom
to get to the kitchen. A business letter on Appellant's dresser indicated that at one time
Appellant's girlfriend, Shonica Powers, was receiving mail at the residence. 

 Appellant relies on Corea, 52 S.W.3d at 316, to support his argument that Nathan
did not have authority to consent to a search of his bedroom. In Corea, however, the court
noted that once consent became ambiguous the officers were obligated to investigate
further. Id. at 317-318. Their failure to do so rendered the search unreasonable, and the
court found that the State did not sustain its burden of showing actual or apparent authority. 
Id. at 318. 

 During the suppression hearing, Detective Valdez testified that he believed Nathan
had authority to consent to a search and on cross-examination, testified that Nathan acted
as if he had authority over the entire house which led him to believe consent was not
ambiguous. Nevertheless, Detective Phillips questioned Nathan further on ownership of the
house, payment of bills, and access to Appellant's bedroom. As previously mentioned,
Appellant had many friends visit his bedroom and at one time had his girlfriend receiving
mail at his address. Unlike the facts in Corea, in this case there is no evidence that
Appellant was the only person with access to his bedroom. Furthermore, under the
apparent authority doctrine, even if Nathan did not actually have authority to consent to the
search, the warrantless search is still valid if the facts available to Detectives Valdez and
Phillips at the moment warranted a man of reasonable caution to believe that Nathan had
authority over the premises. See Rodriguez, 497 U.S. at 188. We conclude that, given the
officer's further investigation and Nathan's responses, Detective Phillips reasonably
believed that Nathan had apparent authority to consent to a search of the entire premises.

Voluntariness of Consent


 Typically, whether consent is voluntary turns on questions of fact and is determined
from the totality of the circumstances. Schneckloth, 412 U.S. at 227-229; Harrison v. State,
205 S.W.3d 549, 552 (Tex.Crim.App. 2006). For that reason, a finding of voluntary
consent is reviewed only for an abuse of discretion. Montanez v. State, 195 S.W.3d 101,
108 (Tex.Crim.App. 2006). The standard for measuring the scope of consent "is that of
'objective' reasonableness" or what an ordinary reasonable person would have understood
under the same or similar circumstances. Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct.
1801, 114 L.Ed.2d 297 (1991). See also Johnson v. State, 226 S.W.3d 439, 443
(Tex.Crim.App. 2007). 

 When voluntariness is challenged at trial, the State must prove the voluntariness of
the consent by clear and convincing evidence. Harrison, 205 S.W.3d at 552. While we
recognize that the Supreme Court applies the lower standard of preponderance of the
evidence in determining voluntariness, it has long been held that the courts of this state are
not bound by the Supreme Court's analysis of federal constitutional provisions when
construing our constitution as providing greater rights to the people. See State v. Ibarra,
953 S.W.2d 242, 244-45 (Tex.Crim.App. 1997). (4)

 Although Nathan denied that he gave permission to have Appellant's bedroom
searched, he testified that he has memory problems and difficulties recalling details. He
also testified that the signature on the consent form looked like his. During rebuttal,
Detective Phillips testified that Nathan appeared "slow" and that he engaged him in a five
to ten minute conversation to determine whether he was competent to sign a consent form. 
In response to questions, Nathan told Phillips that he had a good job at a grocery chain and
had held the job for some time. He also paid his rent and bills on time. According to
Phillips, after their conversation, he felt confident that Appellant was competent to sign a
short, uncomplicated consent form. Cf. Delao v. State, __ S.W.3d __, No. PD 00-0067-07,
2007 WL 2781295, *4 (Tex.Crim.App. Sept. 26, 2007) (concluding that the totality of the
circumstances standard applies to all levels of mental capacity in evaluating voluntariness
of confessions). Except for Nathan's difficulty in recalling details, there is no evidence that
he did not voluntarily sign the consent to search form.

 We conclude the trial court did not abuse its discretion in denying Appellant's motion
to suppress based on a finding that Nathan, having at least apparent authority to do so,
voluntarily consented to a search of Appellant's bedroom. Thus, the crack cocaine was not
erroneously admitted into evidence. Accordingly, we overrule appellant's contentions. Our
disposition pretermits consideration of Appellant's claim that he suffered harm of
constitutional dimension. 

 The trial court's judgment is affirmed. 


 Patrick A. Pirtle Justice


 

Do not publish.


Quinn, C.J. - I concur with the result and that portion of the opinion noting that the objection
to the evidence was not preserved. Because it was not preserved, the court need not write
substantively on the issue.

1. The evidence conflicts on whether the consent form was signed before or after the
search that led to discovery of the crack cocaine.
2. When Detective Phillips was testifying during the trial on the merits, the State
offered into evidence, State's Exhibit 7, an evidence envelope, and State's Exhibit 8, an
envelope containing approximately sixteen rocks identified as crack cocaine. After a brief
voir dire examination, defense counsel announced, "We have no objections to 7 and 8,
Your Honor." State's Exhibits 7 and 8 were then admitted into evidence. When a pretrial
motion to suppress evidence is overruled, a defendant need not subsequently object at trial
to the same evidence in order to preserve error for appeal. Moraguez v. State, 701 S.W.2d
902, 904 (Tex.Crim.App 1986). However, if the defendant affirmatively states he has "no
objection" to the admission of the evidence at trial, he waives his right to complain of the
error on appeal despite the pretrial ruling. Id.; Dean v. State, 749 S.W.2d 80, 83
(Tex.Crim.App. 1988); Strauss v. State, 121 S.W.3d 486, 490 (Tex.App.-Amarillo 2003,
pet. ref'd)
3. See also Brown v. State, 212 S.W.3d 851, 868 (Tex.App.-Houston [1st Dist.] 2006,
pet. ref'd); Davis v. State, 93 S.W.3d 664, 668 (Tex.App.-Texarkana 2002, pet. ref'd);
Corea v. State, 52 S.W.3d 311, 316 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd);
Riordan v. State, 905 S.W.2d 765, 771 (Tex.App.-Austin 1995, no pet.); 
4. By his issue, Appellant raises violation of his rights under article 38.23 of the Texas
Code of Criminal Procedure; his arguments, however, are limited to constitutional
violations.